UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:07-CV-11-R

FRATERNAL ORDER OF POLICE
BARKLEY LODGE #60, INC., et. al.,                                                    PLAINTIFFS

v.

ERNIE FLETCHER, et. al.,                                                             DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the Court on the Defendants' Motion to Dismiss (Docket #28).

The Plaintiffs have responded (Docket #29), and the Defendants have replied (Docket #31).

This matter is now ripe for adjudication.  For the following reasons, the Defendants' Motion to

Dismiss is **DENIED in part** and **GRANTED in part**.

## BACKGROUND

The Plaintiffs, consisting of the Fraternal Order of the Police, Barkley Lodge #60, as well

as current and past corrections officer at the Kentucky State Penitentiary, filed a complaint

alleging violations of the Fair Labor Standards Act ("FLSA"); the Portal to Portal Act ("PPA");

and the mandatory career retention programs provisions under KRS § 196.160, against: former

Kentucky Governor Ernie Fletcher; Department of Corrections Commissioner John D. Rees;

Kentucky State Penitentiary Warden Thomas Sampson; and Wardens Becky Pancake and Steven

Haney, all in their individual and official capacities.

Count I of the amended complaint alleged that the Defendants exempted and continued to

deny overtime compensation to the Plaintiffs in violation of the FLSA.  Count II of the amended

complaint alleged that the Defendants violated and continued to deny the Plaintiffs preliminary

and "postliminary" compensation for services performed prior to and/or subsequent to the

workday, in violation of the PPA.  Lastly, Count III of the amended complaint alleged that the

Defendants violated KRS 196.160 by not providing funds for veteran staff under the mandatory

career retention program

On August 2, 2007, this Court entered an Order dismissing the Plaintiffs' claims against

the Defendants in their official capacities seeking injunctive relief under the FLSA and the PPA,

as precluded by the Eleventh Amendment.  The Court also dismissed the Plaintiffs' claims

against the Defendants in their individual capacities seeking injunctive relief under the FLSA

and PPA, as such authority solely lies with the Secretary of Labor.

The Court did not dismiss the claims asserted against the Defendants under the FLSA and

the PPA seeking monetary damages against the Defendants in their individual capacities, as the

motion to dismiss filed by the Defendants did not these address claims.  For that reason, the

Court retained pendent jurisdiction under 28 U.S.C. § 1367 to hear the state law claims brought

against the Defendants under KRS § 196.160, and did not dismiss those claims.

The Defendants then filed the present Motion to Dismiss the Plaintiffs' remaining claims.

## STANDARD

"When considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of

Civil Procedure, the district court must accept all of the allegations in the complaint as true, and

construe the complaint liberally in favor of the plaintiff." *Lawrence v. Chancery Court of Tenn.*,

188 F.3d 687, 691 (6th Cir. 1999) (citing *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995)).

Denial of the motion is proper "unless it can be established beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Achterhof v.*

*Selvaggio*, 886 F.2d 826, 831 (6th Cir.1989) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46

(1957)). Nonetheless, unwarranted factual inferences or legal conclusions masquerading as fact

will not prevent a motion to dismiss. *Blakely v. United States*, 276 F.3d 853, 863 (6th Cir.

2002). A "complaint must contain either direct or inferential allegations respecting all the

material elements to sustain a recovery under some viable legal theory." *Andrews v. Ohio*, 104

F.3d 803, 806 (6th Cir. 1997) (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir.

1993)).

## DISCUSSION

### 1. Claims Against the Defendants in their Individual Capacities under the FLSA for Monetary Damages

#### A. The Circuit Split and Lack of a Uniform Standard

The Defendants argue that the Plaintiff's remaining claims should be dismissed because

individual liability may not be imposed against governmental defendants under the FLSA.[1] They

argue they are not "employers" that may be sued under the FLSA.

The FLSA defines "employer" as:

> ...any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d).

It is clear that the Eleventh Amendment prohibits suits against state governments and

their agencies unless Congress has abrogated the sovereign immunity of the state and that a suit

---

[1]The Plaintiffs also have remaining claims against the Defendants in their individual capacities under the Portal to Portal Act (PPA), but as the PPA does not provide an independent basis for relief because it was passed as an amendment to the FLSA to limit the FLSA's coverage, it will not be discussed in this opinion.

against a state official in his official capacity is actually a suit against the state.  *Hans v. Louisiana*, 134 U.S. 1, 18 (1890); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 67 (1989).

Further, this Court held in its Opinion and Order of August 2, 2007, that the Eleventh

Amendment also bars claims for injunctive relief against state officials in their official capacities

under the FLSA.  *See Jackson v. Commonwealth of Kentucky*, 129 F.3d 1264 (6th Cir. 1997).

The Sixth Circuit "has interpreted the FLSA's 'any person who acts, directly or indirectly, in the

interest of the employer' language to impose individual liability on private-sector employers."

*Mitchell v. Chapman*, 343 F.3d 811, 827 (6th Cir. 2003) (citing *United States DOL v. Cole

Enters., Inc.*, 62 F.3d 775 (6th Cir. 1995); *Fegley v. Higgins*, 19 F.3d 1126 (6th Cir. 1994)).

However, neither the United States Supreme Court nor the Sixth Circuit Court of Appeals has

addressed whether state officials and public employees are "employers" subject to individual

liability under the FLSA.

The Family Medical Leave Act's (FMLA) definition of "employer" is substantially

similar to the definition in the FLSA as it is "borrowed" from the FLSA.  *Id.*  As such, courts

faced with the question of what constitutes an "employer" under either act often turn to cases

interpreting "employer" under the other act for guidance.  *See, e.g., Mercer v. Borden*, 11

F.Supp. 2d 1190, 1191 (D. Cal. 1998) (holding "[s]ince the definition of 'employer' in the

FMLA is identical to the definition of 'employer' in the FLSA...individuals are potentially

subject to liability under the FMLA.  The plain language of the FMLA appears to compel this

result.")  The FMLA definition lists several more categories of "employer," but includes, like the

FLSA definition, "any person who acts, directly or indirectly, in the interest of an employer to

any employees of such employer and...any successor in interest of the employer...includes any

'public agency.'" 29 U.S.C. § 2611(4)(A).

The definition of "employer" under the FMLA has been the subject of considerably more litigation than the definition of "employer" under the FLSA.  There is a circuit split on the question as to whether the FMLA's definition of "employer" extends to public officials in their individual capacities.  *See Rutland v. Pepper*, 404 F.3d 921, 923 n.1 (5th Cir. 2005) (comparing *Mitchell*, 343 F.3d at 829-32 and concluding that the FMLA does not impose individual liability on public officials); *Wascura v. Carver*, 169 F.3d 683, 685-87 (11th Cir. 1999) (same); *but see Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) (holding that the FMLA permits public officials to be sued in their individual capacities); *Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1273-74 (D. Nev. 2001) (same).  Further, the Fifth Circuit, holding in *Modica v. Taylor*, 465 F.3d 174, 187 (5th Cir. 2006), that the "plain language of the FMLA permits public employers to be held individually liable" stated that while the district courts are divided on this question

> it appears that a majority have concluded that public employees may be liable in their individual capacities under the FMLA. *See Cantley v. Simmons*, 179 F. Supp. 2d 654, 656 (S.D.W. Va. 2002) ('While some district courts have decided otherwise, the majority of district courts have concluded that public employee supervisors can be sued individually under the FMLA.'). Compare *Sheaffer v. County of Chatham*, 337 F. Supp. 2d 709, 728-29 (M.D.N.C. 2004) (holding that public employees can be liable under the FMLA), and *Morrow v. Putnam*, 142 F. Supp. 2d 1271, 1273 (D. Nev. 2001) (same), with *Keene v. Rinaldi*, 127 F. Supp. 2d 770, 776 (M.D.N.C. 2000) (holding that public officials are not liable in their individual capacities under the FMLA).

There is not as much of split regarding the definition of "employer" under the FLSA simply because it has been considered less often.  Given this, this Court is faced with no precedent in this circuit as to whether a public official may be liable in his or her individual capacity under the FLSA, but there is a fairly recent holding by the Sixth Circuit Court of Appeals that public officials may not be liable in their individual capacities under the FMLA.

*See Mitchell*, 343 F.3d 811.  This is in contrast to a number of courts that have concluded that

public officials may be sued in their individual capacities under the FMLA, as shown above, and

a few that have reached the opposite conclusion.  Only one circuit, the Eleventh, has clearly

established as the law of the circuit that a public official sued in his individual capacity is not an

"employer" subject to individual liability under the FLSA.  *See Wascura v. Carver*, 169 F.3d

683, 686 (11th Cir. 1999) (citing *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995); *Huff v.

Dekalb County*, 2007 U.S. Dist. LEXIS 6398, at *30 (N.D. Ga. Jan. 30, 2007) ("Eleventh Circuit

law states clearly that 'a public official sued in his individual capacity is not an 'employer'

subject to individual liability under the FLSA.'"); *Givens v. Bd. of Regents*, 2006 U.S. Dist.

LEXIS 96071, at *4 (M.D. Ga. May 1, 2006) ("the Eleventh Circuit Court of Appeals has held

that 'a public official sued in his individual capacity is not an 'employer' subject to individual

liability under the FLSA.'"); *Stratton v. Ala. Dep't of Corr.*, 2006 U.S. Dist. LEXIS 23350, at

*10 (M.D. Ala. March 23, 2006) ("Eleventh Circuit law clearly states that 'a public official sued

in his individual capacity is not an 'employer' subject to individual liability under the FLSA.'").

      In *Wascura v. Carver*, the Eleventh Circuit Court of Appeals was faced with the question

of whether public officials sued in their individual capacities are "employers" under the FMLA.

169 F.3d at 685.  As this was a matter of first impression in the circuit, the Court turned to cases

interpreting the meaning of "employer" under the FLSA for guidance, stating "the fact that

Congress, in drafting the FMLA, chose to make the definition of 'employer' materially identical

to that in the FLSA means that decisions interpreting the FLSA offer the best guidance for

construing the term 'employer' as it is used in the FMLA.  *Id.* at 685-86.

      The *Wascura* court considered its prior decision in *Welch v. Laney*, 57 F.3d 1004 (11th

Cir.1995), which addressed "whether a public official acting as such can be an 'employer' not only in his official capacity but also in his individual capacity" and which established as the law of the circuit "that a public official sued  in his individual capacity is not an 'employer' subject to individual liability under the FLSA." *Id.* at 686.  The *Wascura* court held that "because 'employer' is defined the same way in the FMLA and FLSA, *Welch* control[led]" in the case at hand, and concluded that a public official sued in his individual capacity was not an 'employer' subject to individual liability under the FMLA. *Id.*  Thus, the Eleventh Circuit holds that the definition of  "employer" under the FMLA and FLSA is interchangeable, and a public official sued in his individual capacity is not an employer subject to individual liability under the FLSA or the FMLA. *Id.*

In contrast, in *Darby v. Bratch*, a former employee sued the Kansas City, Missouri, Police Department, the Kansas City Board of Police Commissioners, the City of Kansas City, Missouri, and several individual employees, alleging, among other things, that the defendants retaliated against her in violation of the FMLA.  287 F.3d 673, 676 (8th Cir. 2002).  As a matter of first impression, the court considered "whether a retaliation claim under the FMLA [could] be brought against public officials in their individual capacities." *Id.* at 680.  The court noted that "other courts have analyzed this issue by comparing the definition of employer under the FMLA to the definition of employer under the Fair Labor Standards Act (FLSA)." *Id.*  Contrary to *Wascura*, the court determined that the "plain language" of the FMLA compelled a conclusion that public officials were individually liable under the FMLA, because the statute gave "no reason to distinguish employers in the public sector from those in the private sector." *Id.* at 681.

The Sixth Circuit Court of Appeals has concluded that public officials are not

"employees" subject to individual liability under the FMLA, but in reaching that conclusion, the court conducted a textual analysis of the FMLA in order to resolve the "employer" liability question. *Mitchell*, 343 F.3d at 828.  The court stated that while the FMLA "borrows" from the FLSA, the structure of the definition is very different.  Therefore, a conclusion based on an analysis of the structure of the FMLA is of limited use to this Court in determining whether the Defendants are subject to individual liability under the FLA.

In *Mitchell*, the court noted the decision of the *Wascura* court, but instead of adopting its reasoning, chose to conduct a "textual analysis."  *Id.*  The Court noted that the FMLA's definition of 'employer,' unlike the FLSA definition, segregates the specific provision regarding individual liability (i.e., the "directly or indirectly" clause)...from the specific provision addressing "public agency" employers with an "em dash."  *Id.* at 830.  Section (4) of 29 USCS § 2611 looks like this:

(4) Employer.

(A) In general. The term "employer"--

(i) means any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year;

(ii) includes--

(I) any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer; and

(II) any successor in interest of an employer;

(iii) includes any "public agency", as defined in section 3(x) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(x)); and

(iv) includes the General Accounting Office [Government Accountability Office] and the Library of Congress.

The Court reasoned that "the separation of otherwise related concepts (i.e., what the term 'employer' 'includes') into distinctly enumerated clauses compels an interpretation that treats each clause in an independent manner." *Id.* As the text separates the clauses into distinct provisions, the Court said that the structure of the statute "patently demonstrates that the individual liability provision and public agency provision are separate and distinct." *Id.*

The Court noted that the FMLA was passed after the FLSA and adopts several of the FLSA's provisions. *Id.* at 831. However, the Court said, "in each instance where the FMLA adopts a provision of the FLSA, the FMLA refers directly to the FLSA, rather than provides a restatement of the FLSA's provision." *Id.* Instead of directly adopting the FLSA's definition of "employer," the FMLA modified it because of the ambiguity concerning the liability of public agency employees. The FLSA definition reads:

> (d) "Employer" includes any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the

29 U.S.C. § 203(d).

The *Mitchell* court cited *Keene v. Rinaldi*, 127 F.Supp.2d 770, 774 (M.D. N.C. 2000), where the court "explained the significance of the FMLA's modification of the FLSA's 'employer.'" *Mitchell*, 343 F.3d at 832. The *Keene* court explained:

> ...in the FMLA, Congress explicitly took "Public Agency" out of the private employer definition and disconnected it from liability based on a person acting directly or indirectly in the interest of an employer. Therefore, a better way to view the situation is that the FMLA corrected the ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA.

*Id.* (quoting *Keene*, 127 F.Supp.2d at 775).

The *Mitchell* court thus concluded that "the FMLA's individual liability provision does

9

not extend to public agencies," because

> First, Section 2611(4)(A) segregates the provision imposing individual liability from the public agency provision. Second, an interpretation that commingles the individual liability provision with the public agency provision renders certain provisions of the statute superfluous and results in several oddities. Finally, as evidenced by other provisions of the statute, the FMLA distinguishes its definition of employer from that provided in the FLSA by separating the individual liability and public agency provisions.

*Id.*

The *Mitchell* court did note that it had "never extended individual liability to public employees under the FLSA," but had only been presented with the issue in a case dismissed for lack of merit, where the "issue of individual liability for public agency employers was of little relevance." *Id.* at 833 n.27 (citing the unpublished opinion *Wong-Opasi v. Tennessee State Univ.*, Nos. 99-5658, 99-5660, 2000 U.S. App. LEXIS 21242 (6th Cir. Aug. 16, 2000).

Recently, in *Millington v. Morrow County Bd. of Comm'rs*, the United States District Court for the Southern District of Ohio was faced with a former county employee's claim against county commissioners for unpaid overtime compensation under the FLSA. 2007 U.S. Dist. LEXIS 74348, at *1 (S.D. Ohio Oct. 4, 2007). That court noted the *Mitchell* decision and stated, "the fact that Congress indicated an intent not to hold individual public agency officials liable under a similar definition in the FMLA suggests that Congress likewise never intended to impose individual liability on public employees under the FLSA." *Id.* at *37-38. However, the court did not need to delve into the individual liability question, because "even assuming *arguendo* that public officers may be held individually liable under the FLSA," the plaintiff did not show grounds for imposing individual liability against the defendant commissioners. *Id.* at *38.

The *Millington* court granted the defendant commissioner's motion for summary judgment because (1) there was "no evidence that the defendant commissioners knew or had

10

reason to know that plaintiff was working overtime hours at home which he did not report;" and

(2) "the individual commissioners did not exercise the type of control over plaintiff's

employment which is typical of persons found to be acting 'in the interest of an employer.'" *Id.*

"[W]hile the plaintiff technically reported directly to the commissioners, he worked largely

unsupervised." *Id.* at *39.  Further, the individual commissioners did not have "authority to hire

plaintiff, set his salary, or dictate policy regarding overtime or other terms of his employment or

his job functions." *Id.*  Instead, they could "only act collectively as the Morrow County Board of

Commissioners." *Id.*  The court concluded that the Board of Commissioners as a unit was "the

only proper defendant in regard to plaintiff's overtime claims." *Id.* at *39-40.

Similarly, in *Welch v. Laney* (discussed above) the court said that whether a particular

defendant is an employer under the Equal Pay Act (an extension of the FLSA) requires a

consideration of "the total employment situation."  57 F.3d at 1011 (citing *Wirtz v. Lone Star

Steel Co.*, 405 F.2d 668, 669-70 (5th Cir.1968)).  The court should ask "whether or not the

employment [took] place on the premises of the [alleged employer]; how much control [did] the

[alleged employer] exert on the employees; and, [did] the [alleged employer] have the power to

fire, hire, or modify the employment condition of the employees?"  *Id.* (quoting *Wirtz*, 405 F.2d

at 669-70).

In contrast to all of this is the Seventh Circuit case *Luder v. Endicott*, 253 F.3d 1020 (7th

Cir. 2001).  There, the plaintiffs, prison employees, sued the defendants, prison officials (the

warden, deputy warden, and personnel officers), in their individual capacities for allegedly

violating the FLSA by forcing them to work before and after their official shifts without paying

them for the extra work.  *Id.* at 1021-22.  The court rejected the Eleventh Circuit's holding that

11

"a public officer sued in his individual capacity cannot be an employer because it is only in his official capacity that he has authority over the employees' terms of employment." *Id.* at 1022 (citing *Wascura*, 169 F.3d at 686-87; *Welch*, 57 F.3d at 1011). The court reasoned this "would imply that a police officer who used excessive force against a person he was arresting could not be sued in his individual capacity because it was only by virtue of his office that he had the authority to make the arrest. Power and authority are not synonyms." *Id.*

Instead, the Court concluded that the plaintiffs had stated a claim under the FLSA, but the circumstances were such that the Eleventh Amendment acted as a bar to the suit against the state officials in their individual capacities. *Id.* at 1022-24. The court said, "a suit nominally against state employees in their individual capacities that demonstrably has the identical effect as a suit against the state is, we think, barred." *Id.* at 1023. The court concluded the plaintiff's suit would have the same effect as a suit against the state because if the plaintiffs obtained a monetary judgment against the individual defendants they were "not going to pay a chunk of the prison's wages out of their own shallow pockets." *Id.* at 1024. There were four defendants and 145 plaintiffs seeking compensation for at least the three prior years. *Id.*

There would be no way those four defendants could pay such a judgment, and instead, the state would end up paying. *Id.* If it refused to pay, the plaintiffs would just bring a second suit against the defendants. *Id.* However, the court reasoned that before that happened, "upon the first inkling that the state will not be paying the wages to which the plaintiffs have been adjudged entitled." the defendants would quit their jobs "lest they be faced with another crushing judgment." *Id.*

Therefore, the court reasoned that if it allowed the plaintiffs to go ahead with their suit,

12

the "inescapable" conclusion was that the state would be forced to pay and the effect would be identical to a suit against the state. *Id.* Therefore, the court concluded the suit had to be dismissed. *Id.* at 1025.

### B. Conclusion

This brief survey of Sixth Circuit precedent and other circuit opinions indicate that the issue of whether public officials can be sued individually under the FLSA is one of considerable debate. Likewise, on the basis of current Sixth Circuit opinions, a decision by a District Court is of little precedential value but does provide an avenue for the parties to obtain a seminal opinion from the Sixth Circuit. In short, the Court is left with a complicated legal terrain, and this issue is a close call.

As in *Mitchell*, the starting point for the Court is the definition of "employers" under the statue   In *Mitchell,* the statute was the FMLA, and here we are interpreting the FLSA. The *Mitchell* court based its decision on a textual analysis of the FLSA. *Mitchell*, 343 F.3d at 828. It noted that the textual structure of the FMLA was different than that of the FLSA. *Id.* at 830. As indicated earlier in this opinion, the *Mitchell* decision accepts the fact that in 1974 Congress incorporated the "Public Agency" phrase into the FLSA by adding it to an existing function from private employers. *Id.* In *Mitchell*, the court concluded that in the FMLA, Congress extracted "Public Agency" out of the private employer definition. *Id.* at 832. The court concluded that the FMLA corrected any ambiguity of the FLSA, as opposed to letting the ambiguity of the FLSA control the interpretation of the FMLA. *Id.*

The court also concluded that the FMLA's individual liability provision does not extend to public agencies. *Id.* This conclusion was based on an analysis of the text and framework of

the FMLA. In passing, the court also noted that it had never extended individual liability to public employers under the FLSA. *Id.* at 833 n.27.

In actuality, it has never consider that liability either way. Consequently, and understandably, the *Mitchell* opinion does not provide clear guidance on the exact issue before this Court.

*Mitchell* did set forth the framework for the interpretation of statutory language:

> Mitchell's final assertion on appeal is that the district court erroneously interpreted the FMLA as to preclude individual liability claims against public agency employers. The issue of whether the FMLA provides for individual liability against a public employer is a matter of first impression for this Court.
>
> "Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." *See Lake Cumberland Trust, Inc. v. United States Environmental Protection Agency*, 954 F.2d 1218, 1222 (6th Cir. 1992) (citation omitted). The plain meaning of the statute controls, except in rare cases in which the literal application of the statutory language would compel an odd result or produce a result demonstrably at odds with legislative intent. *See Public Citizen v. United States Dep't of Justice*, 491 U.S. 440, 105 L. Ed. 2d 377 (1989). We must begin with the statute's plain language, and may resort to a review of congressional intent or legislative history only when the language of the statute is not clear. *See Hoffman v. Comshare, Inc.* (*In re Comshare Inc. Sec. Litig.*), 183 F.3d 542, 549 (6th Cir. 1999) (citing *Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108 (1980)).

*Id.* at 825-26.

The FLSA defines "employers" as:

> ...any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization (other than when acting as an employer) or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. § 203(d).

The Court finds no ambiguity as to this language. The simplest and plain reading of the

FLSA leads the Court to conclude that public employees who act directly or indirectly in the interest of an employer, including a public agency employer, in relation to an employee, may be held individually liability under the FSLA.

The Court senses that the Courts who ruled otherwise have not based their decision on the plain language of the statute. *Wascura* held that the public officials sued in her individual capacity cannot be an "employer" because it is only in her official capacity that she has authority over the employee's terms of employment. *Wascura*, 169 F.3d at 686.

*Luder* initially concluded that the plain language of the FLSA does provide a cause of action against qualified supervisors who work for a public agency. However, the court noted "...even when a suit is against a public officer in his or her individual capacity, the court is obliged to consider whether it may really and substantially be against the state." *Luder*, 253 F.3d at 1023. After analyzing this exception, that court found the state would be required to pay past and future costs of any judgment against the supervisors and concluded, "[t]his suit is transparently an effort at an end run around the Eleventh Amendment." *Id.* at 1025.

In reaching that conclusion, the court gave a revealing analysis of Eleventh Amendment immunity:

> The general rule is that such suits are not barred by the amendment, because the plaintiff is seeking damages from individuals rather than from the state treasury. The fact that the state chooses to indemnify its employees who are sued in federal court is irrelevant, because it is the voluntary choice of the state, not a cost forced on it by the federal-court suit. Likewise irrelevant is the fact that any exposure of state employees to suit in federal court will, by increasing the expected cost of working for the state, compel the state by reason of competition in the labor market to pay its employees more than if they had a blanket immunity from such suits. It is also irrelevant that the judgment may exceed the employee-defendant's capacity to pay unless he is indemnified, which is merely a misfortune for the plaintiffs unless it places additional pressure on the state to cough up

15

> the money -- but that, like the other labor-market ramifications of liability arising from public employment, is irrelevant too.

*Id.* at 1022-23 (internal citations omitted).

The *Luder* court examined what it expected to be the anticipated result of a judgment against individual supervisor employees. While the observation may have been accurate and may have been a practical, common sense conclusion, it appears to be an issue of legislation rather than judicial interpretation. Arguably, the *Luder* result is the best policy result. The Court of Appeals is allowed to make broader policy decisions than a District Court. Reasonable minds can disagree about whether it is good policy to allow employees to sue supervisors of a public agency who are alleged to have violated the substantive provisions of the FLSA or if it is the best or even correct approach for meeting the statutory purpose of the FSLA. However, that is for the legislature and not this Court to decide.

The Court holds that the FSLA allows individual liability for public employers. Therefore, supervisory personal liability under the FLSA includes those who are employed by a public agency. However, it only includes those supervisors acting directly or indirectly in the interest of apublic agency in relation to the employee. The instant motion is a motion to dismiss and not a motion for summary judgment . Our Circuit has not clearly identified what the parameters of "acting directly or indirectly in the interest of an employer" entail. The Court seriously doubts that some of the Defendants will meet the liberal interpretation of the statute as applied . Nevertheless, discovery may reveal that the Defendants did or did not exercise the requisite level of authority over the Plaintiffs' employment to be considered an employer under the FLSA.

Therefore, the Defendants' Motion to Dismiss the claims against them in their individual

capacities under the FLSA for monetary damages is **DENIED**.  The parties may desire to

consider an interlocutory appeal of this issue.  The Court believes this case presents a close call.

An appellate decision possibly could avoid some needless discovery and expense.  The Court

will set this matter for a status conference in the accompanying Order.

**2.  Claims Against the Defendants Under KRS 196.160(3)**

The Plaintiffs remaining claim is that the Department of Corrections has not provided

funds for veteran staff under the mandatory career retention program as required in KRS

§ 196.160.  KRS §196.160 provides:

> (1) The commissioner shall appoint a warden, a receiver, and other necessary employees
> for each of the state penal and correctional institutions. The compensation of these
> officers and employees may include maintenance. The commissioner may require these
> officers and employees to wear uniforms and to adopt, amend, or rescind administrative
> regulations governing dress and grooming standards of these uniformed officers and
> employees.

> (2) The department shall make the contributions required by KRS 61.592 for
> participation in the hazardous duty retirement program by its employees in those
> positions in state correctional institutions and the Kentucky Correctional Psychiatric
> Center with duties that regularly and routinely require face-to-face contact with inmates.

> (3) For those employees included in subsection (2) of this section and those whose
> primary workplace is a state correctional institution or the Kentucky Correctional
> Psychiatric Center, the department shall institute a career retention program, including
> salary improvements earned through extended time in qualifying public service. Salary
> improvements shall be effected by increasing the base salary of each employee in the
> career retention program by a set monthly amount after the employee's completion of the
> first two (2), four (4), six (6), eight (8), and ten (10) years of employment served after,
> and not prior to, July 1, 2002. The amount of the base salary increase to be awarded an
> employee after the employee's completion of a qualifying amount of public service under
> this subsection shall be as set out in the executive branch budget for each biennium
> following the 2002-2004 biennium in an amount calculated to recruit and retain qualified
> correctional personnel. Salary increases required by this subsection shall be in addition to
> any other increase authorized by law.

> However, the General Assembly never provided funds for the implementation of this

statutory scheme.  Contrary to the Plaintiff's assertions, this most certainly affects whether or not the Court may enforce this statute, and whether the Defendants may be forced to implement its provisions.  "The mere existence of a statute that can be implemented only if funded does not mandate an appropriation. 'The General Assembly is permitted through the reduction or elimination of an appropriation, to effectively eliminate the efficacy of existing statutes.'" *Fletcher v. Office of the AG. ex rel. Stumbo*, 163 S.W.3d 852, 865 (quoting *Commonwealth ex rel. Armstrong v. Collins*, 709 S.W.2d 437, 441 (Ky. 1986)).

Section 230 of the Constitution of Kentucky provides that no money shall be drawn from the State Treasury unless it is appropriated.  Ky. Const. § 230.  The funds for the career retention program authorized in KRS § 196.160 were never appropriated, and thus may not be drawn from the Treasury in order to create the program.  It is the General Assembly alone that has the power "to determine how the people's money will be spent." *Fletcher,*163 S.W.3d at 864 (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 427-28 (1990)).  The Governor has no constitutional authority to exercise legislative powers even when the General Assembly fails to do so.  *Id.* at 871-72.  Thus, as the General Assembly never appropriated funds for the implementation of KRS § 196.160, its efficacy has been eliminated, and the Plaintiffs' claims under it are without merit.

For these reasons, the remaining state law claims are **DISMISSED**.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss is **DENIED in part** and **GRANTED in part**.

An appropriate order shall issue.